Roman Catholic Church, etc., Appellant, v. Registrar of Property of San Juan (First Section), Respondent.

No. 1088. Submitted June 11, 1941.—Decided July 10, 1941.

*Heriberto Torres Solá* and *F. Pérez Almiroty* for appellant. The respondent registrar appeared by brief. *R. Cuevas Zequeira,* as *amicus curiae,* representing Arturo Torregrosa Iliccaga.

Mr. Chief Justice Del Toro delivered the opinion of the court.

This is an administrative appeal from a decision of the Registrar of Property of San Juan (First Section), refusing to record an annuity.

From the petition filed by the appellant and from the documents exhibited therewith, it appears that on January 20, 1917, by a deed executed in San Juan before Notary Public Jorge V. Domínguez, Antonio Alvarez Nava sold to Arturo Torregrosa a certain property in Santurce. It was set forth in said deed that the immovable sold "was encumbered by a *censo* in favor of Nuestra Señora de la Providencia, of this city, amounting to the principal sum of $1,600 and interest thereon at the rate of 5 per cent per annum," and when stating the purchase price and the terms of payment it was provided: "for the stipulated price of $19,620, of which $1,620 is to be retained by the purchaser in order

. to pay the *censo* in favor of Nuestra Señora de la Provi-·dencia, of this city, for a like amount, . . . ''

On presentation for record in the registry of property the alienation was recorded in the name of the purchaser, and in regard to the annuity the following entry was made ·on the record:

'' . . . . The land pertaining to this property is a segregation from a parcel with a frontage of 22 meters and a depth of 62 meters, which formed part of property No. 1602, recorded at folio 24 of this volume, first inscription, the principal property appears to be .subject to the charges specified on said first inscription, the only charge mentioned in the instrument being the censo in favor of Nuestra Señora de la Providencia amounting to $1,620 mentioned in the registry . . . . of the whole purchase price $1,620 is retained by the purchaser to pay the *censo* in favor of Nuestra Señora de la Providencia for a like amount which encumbers the three lots that formed part of the main property, which portion of the purchase price is considered by the vendor as actually paid to him; . . . Mr. Torregrosa accepts as a charge upon him exclusively the aforesaid ·*censo* which burdens the land pertaining to the three properties sold to him, and he desires and consents that the said *censo* be transferred in full as an encumbrance upon the property bearing this number and ·that, although this transaction may not be recorded in the registry owing to the lack of the consent of the annuitant, he declares that he is exclusively responsible for the payment of interest as well as ·of the principal of the encumbrance in the event of its discharge or redemption.''

On August 16, 1934, the registrar made an entry on the margin of the record ''cancelling the mention of the said *censo* and of the obligation to pay the same, on the ground that more than 5 years had elapsed from the date of the mention, at the request of the owner of this property Mr. Torregrosa, in an affidavit dated August 14, 1934.''

At this stage, the Most Reverend Edwin V. Byrne, Roman ·Catholic Bishop of the Diocese of San Juan, presented on April 18, 1941, through his attorney, for record in the registry, as to annuity, copies of the deed of January 20, 1917, and of another deed executed in San Juan on July 5,

1929, by said Most Reverend Byrne and Arturo Torregrosa, in which, after referring to the said deed of January 20, 1917, it is set forth:

"*Fifth:* That the creditor Church was not a party to the said conveyance; and in order that said annuity should formally appear of record in the Registry of Property as an encumbrance upon the property described under letter A as belonging to Mr. Torregrosa, the aforesaid Most Reverend Edwin V. Byrne, in his capacity as Roman Catholic Bishop of Puerto Rico, ratifies and approves in every particular the said deed and agrees to the said annuity becoming a lien exclusively upon the property described under letter A."

The decision of the registrar refusing the record sought reads as follows:

"The record of the annuity acknowledged by the foregoing deed of sale, which has been sought in view of the deed of ratification by the Most Reverend Catholic Bishop of Puerto Rico, is hereby denied, for, although the Most Reverend Bishop accepts and ratifies in a public instrument the deed recognizing the annuity, the latter's mention has already been canceled in the registry subsequent to such ratification, and the registrar is powerless to set aside, relying on an instrument bearing a prior date, the entry of cancellation already made, which has established legal rights in favor of the Torregrosa–Casellas spouses, and a cautionary notice has been entered. . . . "

The appellant in its brief has assigned the following errors claimed to have been committed by the respondent:

"(*a*) Improper application of Section 17 of the Mortgage Law, in so far as the registrar considers that the exhibited deeds dated prior to the cancellation of the annuity can not be recorded.

"(*b*) The holding by said officer that he is without power to cancel, relying on an instrument which bears a prior date, the entry of cancellation already made.

"(*c*) His opinion that the legal rights established in favor of the Torregrosa–Casellas spouses preclude the record sought."

It then argues ably at length the assignments made.

██ We can not, however, follow it in its argument because really, in so far as the essential merits of the contro-

versy are concerned, the same can not be considered in this administrative appeal.

The cancellation of the mention on August 16, 1934, produced legal effects in the registry which the registrar lacks power on his own accord to alter by virtue of instruments previously executed. The question of whether application should be made of Act No. 12 of the Special Session of 1923 (Laws, p. 36) and of Act No. 12 of the Special Session of 1924 (Laws, p. 108) providing for the cancellation of liens in the registry, benefits of which were invoked by the owner of the immovable, a question which involves the present existence or nonexistence of the *censo,* does not fall within the jurisdiction of the registrar but within the jurisdiction of the proper judicial tribunal.

As was decided by this court in *García* v. *Registrar,* 33 P.R.R. 911, 912, 913:

" . . . In the registry there has been created a legal status in favor of Juan Negrón Díaz and it can be changed only with his consent. The registrar himself can not decide the appellant's case and he acted correctly in refusing to record the document, in accordance with article 20 of the Mortgage Law.

" This court held in the case of *Bolívar et al.* v. *Registrar,* 13 P.R.R. 362, that 'After a record is made in the registry of property the registrar has no authority to annul the same without the knowledge and consent of the parties in interest, such powers being vested exclusively in the courts of justice.' If in this case the appellant's claim should be upheld the record made in the name of Juan Negrón Díaz would be canceled as to 37 hundredths of an acre.

"The same doctrine was laid down in the case of *Dávila* v. *Registrar of Caguas,* 28 P.R.R. 183, 185. For a more thorough understanding of what errors can be corrected by the registrar and what not, see articles 254 *et seq.* of the Mortgage Law, the corresponding provisions of the regulations for its execution and volume 4, pages 94 *et seq.* of Galindo's Mortgage Law."

Recently, in *De la Torre* v. *Registrar,* 57 P.R.R. 686, the doctrine was reaffirmed as follows: "After a record has been made and signed in the books of the registry, the reg-

istrar of property lacks power to annul and cancel the same, such power being vested exclusively in the courts.''

For the reasons stated the appeal must be overruled and the decision appealed from affirmed.